UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

                                          **MEMORANDUM & ORDER**

        - against -                        21-CR-193(KAM)


RICHARD DALE STERRITT, JR., et al,

                Defendants.

----------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        On June 25, 2021, Harlan Protass, Esq. filed a notice
of appearance on behalf of defendant Mark Ross, who had been
appointed Criminal Justice Act ("CJA") counsel, Murray Singer,
Esq. (ECF No. 57.) By letter dated June 25, 2021, Mr. Protass
advised the court of potential conflicts of interest arising
from his representation of defendant Ross. (ECF No. 58.) On
the same day, the government also advised the court of the
potential conflicts of interest posed by Mr. Protass's retention
as counsel for defendant Ross following his representation of
co-defendant Richard Dale Sterritt, Jr. in connection with a
civil investigation by the Securities and Exchange Commission
(the "SEC") involving the same set of facts at issue in the
instant criminal case. (ECF No. 59.) For the reasons set forth
below and based on *Curcio* hearings separately conducted with Mr.
Ross and Mr. Sterritt, the court concludes that the conflicts

1

identified by Mr. Protass and the government are waivable and were fully, knowingly, and intelligently waived by both co-defendants.  Accordingly, for the reasons herein, the court declines to disqualify Mr. Protass from representing defendant Ross.

**BACKGROUND**

**I. The Criminal Prosecution & SEC Civil Action**

On April 8, 2021, a grand jury in the Eastern District of New York returned a sealed five-count indictment charging defendants Richard Dale Sterritt, Jr., Michael Greer, Robert Magness, Mark Ross, and Robyn Straza with securities fraud, securities fraud conspiracy, wire fraud conspiracy and money laundering conspiracy.  (ECF No. 1.)  As relevant here, Mr. Ross and Mr. Sterritt are co-defendants and have been charged with substantially the same offenses arising from their participation in a series of related fraudulent schemes involving an alleged offering fraud for Zona Energy, Inc. and the market manipulation of publicly traded shares of OrgHarvest Inc. stock.  (*Id.*)

On April 14, 2021, the Securities and Exchange Commission (the "SEC") commenced a civil action, alleging that defendants Sterritt and Ross (among others), participated in multiple fraudulent schemes in violation of the securities laws for conduct substantially similar to that alleged in the

criminal indictment.  (*See SEC v. Sterritt, et al*, Case No. 21-cv-2008, ECF No. 1, Complaint ¶¶ 1-11 (the "SEC Case").)

## II. Mr. Protass's Representation of Defendant Sterritt

On June 25, 2021, after filing his notice of appearance on behalf of defendant Ross, Mr. Protass advised the court that he "previously represented [co-defendant] Sterritt in an investigation initiated by the SEC that appears to ultimately have resulted in the filing of the SEC Case (and, potentially, contributed to the Criminal Case to the extent that the SEC and the government shared information and/or coordinated their respective investigations)."  (ECF No. 58, Letter from H. Protass, dated June 25, 2021.)  Mr. Protass asserts that his representation of Mr. Sterritt was "quite limited" to an incomplete production of documents in response to a September 21, 2020 *subpoena duces tecum* that the SEC served on Sterritt. (*Id.* at 1.)  Other than the assisting Sterritt to respond to the SEC subpoena, Mr. Protass "never represented Mr. Sterritt in any other matter in any other court and never represented Mr. Sterritt in the Criminal Case or the SEC Case."  (*Id.* at 2.) Nonetheless, Mr. Protass advised the court of his previous representation of Mr. Sterritt so the court could either conduct a *Curcio* hearing following the procedures set forth in *United States v. Curcio*, 680 F.2d 881, 888 (2d Cir. 1982), or otherwise obtain a conflict waiver from Mr. Sterritt.  (*Id.*)

On the same day, the government also advised the court that, in light of Mr. Protass's previous representation of defendant Sterritt, there is "a substantial risk that Mr. Protass will face irreconcilably conflicted duties of loyalty." (ECF No. 59, Letter from the Government, dated June 25, 2021, at 1.)  Accordingly, the government recommended that the court conduct a "a rigorous and searching inquiry" in accordance with the procedures set forth in *Curcio*, 680 F.2d 881, "to determine whether both Sterritt and Ross fully, knowingly, and intelligently waive the potential conflicts posed by Mr. Protass' proposed representation."  (*Id.* at 1.)  After consideration of the issues presented in both Mr. Protass's and the government's letters, the court scheduled separate *Curcio* hearings for both defendants Ross and Sterritt.  (*See* Minute Entries 6/28/2021; Dkt. Order 7/6/2021.)

## III. The *Curcio* Hearings

The court held independent *Curcio* hearings for each defendant Ross and Sterritt, with conflict-free CJA *Curcio* counsel, the government, and Mr. Protass present.

### A. July 7, 2021 *Curcio* Hearing with Mr. Ross

On July 7, 2021, a *Curcio* hearing was held before this court, with defendant Ross appearing with CJA and conflict-free *Curcio* counsel, Murray Singer, Esq., and Mr. Protass.  At the hearing, Mr. Ross attested that he had met with Mr. Singer and

4

that he understood fully the potential conflicts of interest arising from his retention of Mr. Protass as counsel. (*See* ECF No. 76, Transcript of *Curcio* Hearing ("Ross. Tr. 7/6/2021"), dated July 7, 2021, at 5:25-6:18.) During the hearing, the court advised Mr. Ross of the numerous potential conflicts of interest that may arise from Mr. Protass's prior representation of co-defendant Sterritt. Among other conflicts, the court advised Mr. Ross of the following:

> THE COURT: Now, one of the issues that presents itself is that at some point Mr. Sterritt's current lawyer or Mr. Protass may decide to adopt a defense strategy that shifts blame away from their client on to another defendant. Do you understand?
>
> ROSS: Yes, I understand, Your Honor.
>
> THE COURT: Now, even if your view and Mr. Protass's current view is that Mr. Sterritt is the most culpable, Mr. Protass will be forbidden by his ethical obligations and duty of loyalty to Mr. Sterritt from shifting blame on to Mr. Sterritt. Do you understand?
>
> ROSS: Yes, I understand, Your Honor.
>
> THE COURT: And that limitation may impair his ability to give you the full, vigorous defense that you are entitled to. Do you understand?
>
> ROSS: Yes, I understand, Your Honor.

(Ross. Tr. 7/6/2021, at 14:22-15:12). Furthermore, the court explained that Mr. Protass's professional duties of loyalty and confidentiality to, and his attorney-client privilege with Mr.

5

Sterritt extended beyond Mr. Protass's representation of Mr.
Sterritt, and could impair Mr. Protass's ability to fully and
vigorously represent Mr. Ross.

> THE COURT: All right. So, Mr. Protass has an
> ongoing ethical duty of loyalty to Mr.
> Sterritt and of confidentiality to Mr.
> Sterritt. Even though he no longer
> represents him. Those duties to Mr. Sterritt
> which postdate and survive the end of their
> attorney/client privileged relationship
> could affect Mr. Protass's ability to
> investigate leads or to develop evidence or
> to introduce evidence or to make arguments
> that would benefit you if they might also
> intend to incriminate or shift blame to Mr.
> Sterritt or to be contrary to Mr. Sterritt's
> interest. Do you understand?
>
> ROSS: Yes, I understand, Your Honor.

(Ross. Tr. 7/6/2021, at 19:22-20:7).  Further, the court
cautioned Mr. Ross that the court could not "anticipate what
conflicts or issues may arise" during the criminal prosecution
and the only "absolute is that Mr. Protass does have an ongoing
duty to Mr. Sterritt."  (*Id.* at 22:18-23:6.)

Following the court's review of the potential
conflicts of interest that might arise, explanation of the
ethical obligations that Mr. Protass owes Mr. Sterritt, and
discussion with Mr. Protass regarding the steps he would take to
mitigate the risks of conflicts of interests, the court asked
Mr. Ross whether he would like another opportunity to discuss
these important issues with his conflict-free *Curcio* counsel,

Mr. Singer.  (*Id.* at 30:3-5.)  In response, Mr. Ross stated that the court "impressed upon me how important that this is" and requested "another conversation with Mr. Singer to be on the safe side even though I have a very strong desire to be represented by Mr. Protass." (*Id.* at 30:21-25.)  The court adjourned Mr. Ross's *Curcio* hearing to provide him additional time to confer with Mr. Singer.

     B. July 13, 2021 *Curcio* Hearing with Mr. Ross

On July 13, 2021, the court continued Mr. Ross's *Curcio* hearing with Mr. Ross, conflict-free counsel Mr. Singer, Mr. Protass, and the government present.  (*See* Minute Entry 7/13/2021.)  At the hearing, Mr. Ross confirmed that following the July 7, 2021 *Curcio* hearing, Mr. Ross had the opportunity to consult with Mr. Singer to discuss the issues raised at the initial hearing.  (*See* Transcript of *Curcio* Hearing ("Ross. Tr. 7/13/2021"), dated July 13, 2021, at 4:9-11.)  Mr. Ross attested that he had sufficient time to discuss with Mr. Singer and did not need additional time to consider the issues.  (*Id.* at 4:12-21.)  Mr. Ross testified that he fully understood the potential conflicts of interest arising from his retention of Mr. Protass as counsel and wished to give up his right to conflict-free counsel.  (*Id.* at 6:12-17.)  In particular, the court asked Mr. Ross the following:

> THE COURT: Do you wish to give up your
> right, after having consulted with Mr.
> Singer, do you wish to give up your right
> despite any potential conflicts that I
> described earlier and have reiterated again
> today and to proceed in this matter with
> Mr. Protass as your attorney?
>
> ROSS: Yes, I do wish to do that, Your Honor.

(Ross. Tr. 7/13/2021, at 6:12-7:5). At the conclusion of the hearing, the court reserved decision on the matter and explained to Mr. Ross that even though Mr. Ross knowingly waived the conflicts of interest arising from Mr. Protass's prior representation of a co-defendant, the court retained an independent obligation to ensure that criminal trials are conducted within the ethical standards of the profession and to protect the integrity of the process in reaching a fair verdict. (*Id.* at 7:8-21.)

C. July 23, 2021 *Curcio* Hearing with Mr. Sterritt

On July 23, 2021, the court held a *Curcio* hearing with Mr. Sterritt, CJA and conflict-free *Curcio* counsel, Ms. Dawn Cardi, Esq., the government, and Mr. Protass present. (*See* Minute Entry 7/23/2021.) At the hearing, the court explained the purpose of the *Curcio* hearing and the nature and impact Mr. Protass's representation of Mr. Ross may have on Mr. Sterritt's interests. (See ECF No. 80, Transcript of *Curcio* Hearing ("Sterritt Tr."), dated July 23, 2021, at 3:2-4:22.) The court explained to Mr. Sterritt that although Mr. Protass was no

8

longer representing him, Mr. Sterritt's "choice of whether to waive the conflict and [his] choice as to whether to waive the attorney-client privilege" held between Mr. Protass and Mr. Sterritt, "could affect whether Mr. Protass can continue to represent Mr. Ross in this case." (*Id.* at 7:21-8:2.)

During the hearing, the court similarly advised Mr. Sterritt of the conflicts that may arise from Mr. Protass's representation of Mr. Ross, including as follows:

> THE COURT: Are you also aware that some of those documents that you produced to Mr. Protass [in the SEC case] may assist you in successfully defending against the Government's charges?
>
> STERRITT: Yes, ma'am.
>
> THE COURT: They may also assist you in shifting blame to other defendants including, Mr. Ross. Do you understand that?
>
> STERRITT: Yes, ma'am.
>
> THE COURT: Do you also understand that some of those documents or information that you shared with Mr. Protass may assist you in receiving a more favorable sentence, if you are found guilty, including but not limited to an argument that the blame should be shifted away from you and toward Mr. Ross? Do you understand?
>
> STERRITT: Yes, ma'am.

(Sterritt. Tr. at 22:4-18.) The court advised Mr. Sterritt that the court could not "predict how conflicts may arise in the future" and warned Mr. Sterritt that although Mr. Sterritt may

currently believe that his interests align with co-defendant Ross's interests, those interests "could diverge or change at any point in the future, including the possibility that Mr. Ross could agree to cooperate with the Government in the prosecution of this case." (*Id.* at 25:3-21.)

Furthermore, the court explained to Mr. Sterritt that Mr. Protass retained an "ongoing duty" to Mr. Sterritt, which could hinder Mr. Protass's ability to "investigate leads or introduce evidence or make arguments that could hurt you on behalf of Mr. Ross." (*Id.* at 26:16-19.) The court explained that the conversations Mr. Sterritt had with Mr. Protass in the past were protected by the attorney-client privilege and may not be disclosed unless Mr. Sterritt provides consent. (*Id.* at 32:4-9.) The court cautioned that if Mr. Sterritt waived the attorney-client privilege, "Mr. Protass would be free to use communications and information that he gained from [Sterritt] in defending his current client Mr. Ross." (*Id.* at 32:25-33:4.)

Mr. Sterritt testified that he had sufficient time to consult with his conflict-free counsel, Ms. Cardi, and was ready to advise the court of his decision regarding the waivers of the conflicts of interest and the attorney-client privilege with Mr. Protass. (*Id.* at 31:22-32:3, 33:5-10, 34:4-10.) The court asked Mr. Sterritt the following:

> THE COURT: Now, sir, I would like to ask you whether you would like more time or whether you are ready to advise me as to how you want to [decide] with regard to Mr. Protass' current representation of your codefendant.
>
> STERRITT: Yes, ma'am, I have made a decision; and, to save time, the Court's time, I will waive the conflict.
>
> THE COURT: All right. And are you also waiving the attorney-client privilege, the conversations, the privilege that you enjoy?
>
> STERRITT: Yes, ma'am.
>
> THE COURT: And you say you want to save time. I don't think saving time is ever a good idea when something this important is at stake. So I don't want you to feel that you are rushed or you are trying to save the Court time or do the Court some sort of a favor by making this decision, because, if you do waive the conflict and waive the attorney-client privilege, it will be very difficult to raise this as an issue if you are convicted and if you choose to appeal any aspect of your conviction. Do you understand?
>
> STERRITT: Yes, ma'am.

(*Id.* at 30:6-13.)  The court reiterated that that Mr. Sterritt should not make any decision to "save the court's time" and noted that Mr. Sterritt should have sufficient time to consult with his conflict-free counsel Ms. Cardi before deciding to waive any conflicts or privileges.  (*Id.* at 44:21-45:4.)  Mr. Sterritt said that he had thought about the issue for the last "several weeks" and was prepared to waive both the conflicts of

11

interest and his attorney-client privilege.  (*Id.* at 45:5-46:16.)

Following Mr. Sterritt's waivers of the conflicts of interest and his attorney-client privilege, the court asked Mr. Protass what steps he would take to mitigate the conflicts of interest that may arise from his prior representation of Mr. Sterritt.  As an initial matter, Mr. Protass confirmed that he turned over all physical files and access of electronic documents from his previous representation of Mr. Sterritt to Ms. Cardi, Mr. Sterritt's current counsel.  Next, Mr. Protass represented that he would engage in two steps to the extent any potential conflicts of interest arise.  First, Mr. Protass would consult with Michael Ross, Esq., whom was described by Mr. Protass as an ethics expert and colleague, regarding any conflict issues that might arise.  (*Id.* 38:9-22.)  Second, in the event that Mr. Sterritt chooses to testify at a pre-trial proceeding or trial, Mr. Protass represented that he would retain co-counsel, and erect an ethical screen to prevent any privileged information or communications from Mr. Protass's prior representation of Mr. Sterritt from impacting his current representation of defendant Ross.  (*Id.* at 38:23-39:5.) Finally, Mr. Protass also represented that should a conflict arise that is "unsolvable, irreconcilable, and that would prejudice either Mr. Ross, my client, or Mr. Sterritt," Mr.

Protass would withdraw from the case, substitute counsel, and turn over all files to the newly retained counsel. (*Id.* at 39:11-40:1.)  Following Mr. Protass's statements to the court, Mr. Sterrit once again agreed to waive his attorney-client privilege with Mr. Protass. (*See id.* 46:5-7.)

In light of the defendants' waivers and for the reasons set forth below, the court holds that the conflicts identified by Mr. Protass and the government, and discussed at the hearings are waivable and were fully, knowingly, and intelligently waived by both co-defendants. Accordingly, the court declines to disqualify Mr. Protass from representing defendant Ross.

## LEGAL STANDARD

### I.   The Sixth Amendment

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 271, (1981).  A criminal defendant, however, "does not have the absolute right to counsel of her own choosing." *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir. 1993); *see also Wheat v. United States,* 486 U.S. 153, 159 (1988) ("[W]hile

13

the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

The Second Circuit has explained that although a criminal defendant can waive his Sixth Amendment rights in certain circumstances, the right to waiver is "not absolute" because "'[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Locascio,* 6 F.3d at 931 (quoting *Wheat,* 486 U.S. at 160); *see also United States v. Jones,* 381 F.3d 114, 119 (2d Cir. 2004) ("The disqualification issue . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.").

The Second Circuit has explained that "[i]f the district court concludes that defense counsel has a genuine conflict, it has to determine whether the conflict is so severe as to require the attorney's disqualification or whether it is a lesser conflict that can be waived in a *Curcio* hearing." *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019).  "In most

cases where a defendant's attorney has a conflict, the defendant 'may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation.'" *Id.* (*quoting United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012)).  The Second Circuit has identified unwaivable conflicts that are "so severe" that they amount to "*per se* violation[s] of the Sixth Amendment where the defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *Arrington*, 941 F.3d at 40 (internal quotation marks omitted).  Nonetheless, disqualification is considered a "drastic measure." *Locascio,* 6 F.3d at 935.

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Perez,* 325 F.3d 115, 125 (2d Cir. 2003) (citations omitted).  A potential conflict of interest exists if " 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.' " *Id.* (quoting *United States v. Kliti,* 156 F.3d 150, 153 n.3 (2d Cir. 1998)).

If the court determines that counsel has a conflict of interest, it must eliminate it through either disqualification

15

or waiver. *Kliti*, 156 F.3d 153. If the court finds an actual or severe potential conflict -- "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation" -- it must disqualify the attorney. *See United States v. Levy,* 25 F.3d 146, 153 (2d Cir. 1994). Where there is a potential, lesser conflict suitable to waiver, the Court should follow the procedures set forth in *United States v. Curcio* to allow the party opposing disqualification to make a "knowing and intelligent" waiver of any potential conflict. *See United States v. Curcio,* 680 F.2d 881, 888 (2d Cir. 1982).

A district court has "broad latitude" in determining whether to disqualify on the basis of a conflict or, alternatively, to allow a waiver. *Wheat,* 486 U.S. at 163. According to the Supreme Court, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* As future conflicts are "notoriously hard to predict," the court must "rel[y] on [its] instinct and judgment based on experience in making its [disqualification] decision." *Wheat*, 486 U.S. at 162-63; *Cain*, 671 F.3d at 294.

## II.    Defense Counsel's Prior Representation of a Co-Defendant

As relevant here, an attorney may be disqualified because of his "prior representation of a witness or co-defendant." *Locascio,* 6 F.3d at 931. "An attorney's former representation of a co-defendant on a substantially related matter can create the potential for serious conflict of interest warranting disqualification since the attorney may be limited in impeaching a former client or attacking his credibility on summation without becoming an unsworn witness." *United States v. Pizzonia*, 415 F. Supp. 2d 168, 177 (E.D.N.Y. 2006).

Absent a waiver from the former client, the attorney may not inquire into privileged matters; this restriction may impair counsel's ability to fully cross-examine a witness who is a former client. *See United States v. Malpiedi,* 62 F.3d 465, 469 (2d Cir. 1995); *United States v. James,* 708 F.2d 40, 45–46 (2d Cir. 1983). "An attorney is barred from making an argument or cross-examining a former client in a way that could affect the former client adversely in a present proceeding." *United States v. Mazzariello*, No. 13-cv-211A, 2014 WL 29369, at *5 (W.D.N.Y. Jan. 3, 2014).

A serious conflict warranting disqualification may arise if the attorney is "potentially in a position to use privileged information obtained during prior representation" of the former client. *United States v. Cunningham,* 672 F.2d 1064,

1072 (2d Cir. 1982).  Nonetheless, an attorney's conflict is "significantly diminished" and waivable where the attorney was free to cross-examine a former client who had waived the attorney-client privilege.  *See United States v. Lussier,* 71 F.3d 456, 462 (2d Cir. 1995).  Here, Mr. Sterritt unequivocally waived his attorney-client privilege, as set forth below.

## DISCUSSION

As discussed above, defendant Ross has clearly stated that he strongly prefers to retain Mr. Protass as counsel in the criminal prosecution, notwithstanding the potential conflicts of interests discussed at Mr. Ross's *Curcio* hearings.  (*See* Ross Tr. 7/6/2021 at 30:21-25.)  Based on the record before the court and the testimony elicited at the *Curcio* hearings, the court finds that Mr. Protass has potential conflicts of interest with respect to his current representation of defendant Ross. Specifically, Mr. Protass's prior representation of Mr. Sterritt in a SEC civil investigation involving the same underlying facts as the criminal indictment may impact Mr. Protass's ability to vigorously represent defendant Ross's interests.

Here, the SEC subpoena requested all documents, communications, and agreements from between January 1, 2017, and September 21, 2020, concerning, as most relevant here, all eight companies identified in the government's criminal indictment. (ECF No. 67-1, Securities and Exchange Commission Subpoena ("SEC

18

Subpoena"), dated September 21, 2020; *see generally* ECF No. 1, Criminal Indictment.)  The SEC subpoena also requested all communications Mr. Sterritt sent to, or received from, *inter alia*, defendant Ross, between January 1, 2017 and September 21, 2020.  (SEC Subpoena at 8 ("All Communications with the following individuals sent or received during the Relevant Period . . . Mark Ross").)  During their prior attorney-client relationship, Mr. Sterritt provided Mr. Protass with access to 21,681 emails in response to the subpoena.  (ECF No. 67, at 3.)  Mr. Protass then reviewed and produced 3,792 documents to the SEC comprised of 14,775 pages.  (*Id.*)  Although Mr. Protass claims his communications with Mr. Sterritt were "limited" (*id.* at 4), there is no dispute that Mr. Protass has continuing professional duties and obligations to his former client, Mr. Sterritt, which preclude Mr. Protass from disclosing information related to those documents or taking other actions in the criminal case which may harm his former client's interests, even if Mr. Ross would benefit.

For the reasons set forth below, the court concludes that Mr. Protass's potential conflicts of interests are waivable and that co-defendants Ross and Sterritt fully, knowingly, and intelligently waived any conflicts of interest arising from Mr. Protass's prior representation of Mr. Sterritt.  Both defendants appeared competent, alert, and capable of understanding the

issues and discussions during their *Curcio* hearings.  Each defendant was advised by qualified conflict-free *Curcio* counsel. Furthermore, the court also finds that Mr. Sterritt knowingly, intentionally, and clearly waived his attorney-client privilege with Mr. Protass, with a full understanding of Mr. Protass's ongoing ethical and professional obligations (including Mr. Protass's duties of confidentiality and loyalty) owed to Mr. Sterritt.

## I.    Mr. Protass's Potential Conflicts of Interest are Waivable

Whether a conflict rises to the level to be deemed unwaivable is determined by the court.  The district court must determine whether a "rational defendant would . . . knowingly and intelligently desire[] the conflicted attorney's representation," or whether the conflict is so serious that the court must take the "dramatic measure" of disqualifying Mr. Protass.  *See Arrington*, 941 F.3d at 40 (citations omitted); *Locascio,* 6 F.3d at 935.

Here, as discussed in detail at the *Curcio* hearings, Mr. Protass's prior representation of Mr. Sterritt could prove problematic in a number of ways.  Most notably, if either defendants Ross or Sterritt decide to cooperate, the cooperating defendant may be called to testify against his co-defendant at a trial or other proceeding.  Mr. Protass's ability to defend his

current client, Mr. Ross, including his ability to cross-examine
his former client, Mr. Sterritt, may be hampered by Mr.
Protass's continuing professional and ethical obligations owed
to Mr. Sterritt.  *See United States v. Gotti,* 9 F. Supp. 2d 320,
324 (S.D.N.Y. 1998) (granting in part and denying in part
government's motions to disqualify and explaining that the
attorney-client relationship with a co-defendant can create a
continuing obligation of confidentiality that may be breached
when confidences are exploited during cross-examination, or
ineffective cross-examination may occur if prior confidences are
respected).

        Additionally, as defendant Ross was a subject of the
SEC subpoena (SEC Subpoena at 8), Mr. Protass may be limited in
discussing certain communications he learned about as counsel
between Mr. Ross and Mr. Sterritt for the period covered by the
SEC subpoena.  (ECF No. 67, at 4.)  Furthermore, Mr. Protass's
professional duties to Mr. Sterritt might also preclude Mr.
Protass from interpreting the communications in a light
favorable to Mr. Ross but unfavorable to Mr. Sterritt, or to
shift blame from Mr. Ross to Mr. Sterritt.  Even after trial,
Mr. Protass might be constrained from making post-trial or
sentencing arguments on behalf of Mr. Ross that may negatively
impact Mr. Sterritt's interests.  Thus, Mr. Protass's potential
conflicts may extend broadly to multiple aspects of Mr. Ross's

defense, including court proceedings and pre-trial strategy or discussions with Mr. Ross and/or co-counsel.

After reviewing the case law in this Circuit and considering the specific facts and circumstances of this case, the court concludes that the potential conflicts of interests presented by Mr. Protass's prior representation of Mr. Sterritt are generally waivable. "When a defense attorney cross-examines a former client who is a witness against the defendant, a conflict of interest may exist; absent a waiver from the former client, the attorney cannot inquire into privileged matters." *Lussier*, 71 F.3d at 462; *cf. Perez*, 325 F.3d at 127 ("[A]n attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable.").

Where, as here, "the former client waives the attorney-client privilege on cross-examination, the risk of a conflict is 'significantly diminished,' and at worst, results only in a potential conflict of interest." *Davis v. Smith*, No. 12-CV-0096 (MAT), 2012 WL 6569372, at *7 (W.D.N.Y. Dec. 17, 2012); *see, e.g.*, *Lussier*, 71 F.3d at 461-62 (stating that conflict was at worst potential where former client, who was a witness against the defendant, waived his attorney-client privilege as to his prior communications with former counsel); *United States v. VanHoesen*, No. 06-cr-411, 2007 WL 2089692, at *6 (N.D.N.Y. Jul. 19, 2007) (denying disqualification motion and

22

finding co-defendant's waiver, made during a *Curcio* hearing, of attorney-client privilege from previous representation "obviate[d]" conflict from the prior representation); *see also Curcio*, 680 F.2d at 885 (suggesting waiver of privilege by one defendant so that his attorney could use confidential information to defend his co-defendant may diminish a conflict). Accordingly, a waiver of the conflict of interest by both the present and former client, including a waiver of attorney-client privilege by the former client, "typically alleviates th[e] problem" of prior representation.  *See Gotti*, 9 F. Supp. 2d at 324.

Here, although the government notes that these potential conflicts of interest may ripen into actual conflicts (*see* ECF No. 59, Letter from Government Addressing *Curcio* Issues, dated June 25, 2021, at 5-6), the government also concedes that the conflicts of interest in this case are likely "waivable."  (*See id.* at 5.)  As discussed below, Mr. Protass's potential conflicts of interest are mitigated by Mr. Sterritt's knowing and voluntary waiver of the attorney-client privilege. For the foregoing reasons, the court concludes that Mr. Protass's potential conflicts of interest do not fall under "the very narrow category of cases" in which the Second Circuit has "held attorney conflicts to be unwaivable."  *Perez*, 325 F.3d at 126; *see Cain*, 671 F.3d at 294 (recognizing the court's

"substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses" (quoting *Wheat*, 486 U.S. at 163)).

## II.  Defendants Waived their Rights to Conflict-Free Counsel

Having concluded that Mr. Protass may suffer from potential conflicts of interest, the court conducted hearings following the procedures set out in *Curcio*, 680 F.2d at 888–90, and obtained from the defendants valid waivers of their rights to conflict-free counsel.  *See Levy*, 25 F.3d at 153.  To secure a valid waiver, the court must: (1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the defendant time to digest and contemplate the risks, with the aid of independent counsel if desired.  *Curcio,* 680 F.2d at 888–90.

First, as discussed above and at the *Curcio* hearings, the court informed both defendants of the nature of Mr. Protass's potential conflicts of interests and the ways in which those conflicts may manifest during the criminal prosecution. *See supra* Background, Section III, The *Curcio* Hearings.  In general, Mr. Protass's potential conflicts may extend broadly to multiple aspects of Mr. Ross's defense, including actions taken

24

at court proceedings and pre-trial and post-trial strategy or in discussions with Mr. Ross and/or co-counsel.  Nonetheless, the applicable law involving conflicts arising from former representation of a co-defendant suggests that this potential conflict may be waived by current and former clients.  *See, e.g.*, *Lussier*, 71 F.3d at 461-62.

Second, the court also concludes that after consulting with conflict-free *Curcio* counsel and speaking with the court, defendants Ross and Sterritt stated under oath that they were aware of and understood the nature of Mr. Protass's potential conflicts of interests.  With respect to Mr. Ross (Mr. Protass's current client), the court asked the following:

> THE COURT: Would you please tell me in your own words what you understand your waiver to mean.
>
> ROSS: My waiver . . . means . . . that I'm waiving the right to have different counsel that has no impediments or conflicts of interest.
>
> THE COURT: Do you also understand that you may have difficulty on appeal or in any post-trial proceeding raising an issue of ineffective assistance of counsel based on Mr. Protass's potential conflict?
>
> ROSS: Yes, I understand that I have – I don't have the right to appeal based on Mr. Protass's conflict of interest to ineffective counsel.

(Ross. Tr. 7/13/2021, at 6:12-7:5).  Similarly, as to Mr. Sterritt (Mr. Protass's former client), the court also asked Mr.

Sterritt to explain his understanding of the conflicts.  In his own words, Mr. Sterritt stated:

> STERRITT: Well, you have said that [Ross] could decide to plea and, you know, blame me. That's basically what I have heard. And, you know, if [Ross] cooperates, you know, that could hurt me or whatever.
>
> If Mr. Ross' defense strategy is different than mine, that could potentially hurt me. You know, he may not be able to cross-examine me at trial. He would have to have somebody else cross-examine me.

(Sterritt Tr. at 30:6-13.)  The court also cautioned Mr. Sterritt that, in light of his waiver, "it will be very difficult to raise this as an issue if you are convicted and if you choose to appeal any aspect of your conviction;" to which, Mr. Sterritt acknowledged, "[y]es, ma'am." (*Id.* at 30:6-13.)

Finally, the court provided both defendants Ross and Sterritt independent, conflict-free *Curcio* counsel to advise Mr. Ross and Mr. Sterritt of the potential conflicts of interest. In particular, CJA counsel Murray Singer, Esq. served as Mr. Ross's conflict-free counsel (ECF No. 11, CJA Appointment as to Mark Ross), and CJA counsel Dawn Cardi, Esq. was appointed to represent Mr. Sterritt (ECF No. 68, CJA Appointment as to Dale Sterritt).  Both counsel advised their clients of the potential conflicts of interests presented by Mr. Protass's retention and prior and current representation of the defendants, and both conflict-free counsel attended the *Curcio* hearings.  At the

26

*Curcio* hearings, the court also asked both defendants if they had sufficient time to speak with their conflict-free counsel regarding the issues presented during the hearings. (*See* Ross. Tr. 7/13/2021 at 4:12-21; Sterritt Tr. at 31:22-32:3, 33:5-10, 34:4-10.) Indeed, at the conclusion of his initial *Curcio* hearing, Mr. Ross acknowledged that the court "impressed upon" him the significance of his decision to waive any conflicts of interest, and requested to continue the *Curcio* hearing so that he could have "another conversation" with conflict-free counsel "to be on the safe side." (Ross. Tr. 7/6/2021 at 30:21-31:2.) Hence, the court also finds that defendants Ross and Sterritt were provided sufficient time to discuss the risks with their conflict-free counsel. For the foregoing reasons and following comprehensive *Curcio* hearings with both defendants, the court concludes that defendants Ross and Sterritt knowingly and intelligently waived any conflicts of interest arising from Mr. Protass's prior representation of Mr. Sterritt.

### III.  Defendant Sterritt Waived his Attorney-Client Privilege

In addition to waiving any conflicts of interest, the court also concludes that defendant Sterritt waived his attorney-client privilege with Mr. Protass. As previously discussed, Mr. Protass's continuing obligations owed to Mr. Sterritt may hamper Mr. Protass's advocacy of Mr. Ross. Specifically, among other things:

> The concern here is that the attorney-client relationship with the witness or co-defendant gave rise to continuing obligations of loyalty and confidentiality that may be breached when the confidences are required to be exploited in, for example, cross examining the former client. On the other hand, if prior confidences are respected, the representation of the new client might be ineffective due, for example, to the inability of counsel to conduct a thorough cross-examination

*Gotti*, 9 F. Supp. 2d at 324. In general, a waiver by the current client alone will obviate the need for disqualification, unless the "conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation." *See Lussier*, 71 F.3d at 461; *Levy*, 25 F.3d at 153.

For example, in *United States v. Lussier*, 71 F.3d 456 (2d Cir. 1995), the Second Circuit affirmed a criminal conviction, despite a claim of actual conflict of interest, based on defense counsel's prior representation of a government witness and current representation of the defendant, Roger Lussier. The witness waived attorney-client privilege and acknowledged that he knew defense counsel could cross-examine him. *Id.* at 460. Moreover, Lussier waived any conflict of interest. *Id.* Upon review for abuse of discretion, the Second Circuit agreed with the district court's conclusion that "the primary area of conflict -- [defense counsel's] potential inability to cross-examine [the witness] fully at trial -- was

significantly diminished by this waiver." *Id.* at 462 (citing *Curcio*, 680 F.2d at 885). Thus, the Second Circuit held that "[b]ecause there existed only a potential for a non-severe conflict, a valid waiver could be made." *Id.* Indeed, in *United States v. Leslie*, 103 F.3d 1093 (2d Cir. 1997), the Second Circuit held that a district court properly concluded that a defendant's waiver of "any attorney-client privilege that might otherwise have hindered [the attorney's] cross-examination of" the defendant "obviated the need for a *Curcio* hearing." 103 F.3d at 1098. In sum, the Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client." *United States v. Oberoi*, 331 F.3d 44, 50 (2d Cir. 2003).

Here, at Mr. Sterritt's *Curcio* hearing, the court explained the potential consequences of Mr. Sterritt waiving his attorney-client privilege:

> THE COURT: With regard to the attorney-client privilege, as I have explained, any conversations you had with Mr. Protass in the past or Ms. Cardi or that you may have had even with Mr. DiChiara, your original lawyer, those are privileged. They are confidential. They may not be disclosed unless you agree to disclose them.
> Now, as you discussed earlier today, you stated that you did discuss somewhat the SEC subpoena, the scope of the subpoena, the focus of the subpoena, and the investigation that the SEC was conducting, with Mr.

Protass, correct?

STERRITT: Correct. Right. I read it. I read some parts of it the other day.

THE COURT: Whatever you might have said to him or he might have said to you is absolutely confidential.

STERRITT: Okay.

THE COURT: Only you can decide whether to give up your right to the attorney-client privilege and the protections that it affords. Now, have you discussed or do you understand that you can waive that privilege?

STERRITT: Yes, I do.

THE COURT: In which case Mr. Protass would be free to use communications and information that he gained from you in defending his current client Mr. Ross. Do you understand?

STERRITT: I do.

THE COURT: Have you discussed -- I'm not asking you for what you actually discussed, but generally have you discussed with Ms. Cardi the upsides and downsides of waiving the attorney-client privilege that you enjoy with regard to your communications with Mr. Protass?

STERRITT: Yes, ma'am, Your Honor.

THE COURT: All right. And what you should understand from all of this, if it hasn't been made clear to you, is that Mr. Protass' obligations of loyalty and confidentiality to you remain, even though he no longer formally represents you. Do you understand?

STERRITT: Yes, ma'am.

> THE COURT: He may not investigate leads, introduce evidence, or make arguments on behalf of Mr. Ross that might tend to incriminate you or be contrary to your interests. Do you understand?
>
> STERRITT: Yes, ma'am.
>
> THE COURT: All right, sir. And, if you do decide to waive the attorney-client privilege that you enjoy with regard to your communications with Mr. Protass, he will be free to use that information. Do you understand?
>
> STERRITT: Yes, ma'am.

(Sterritt Tr. at 32:4-34:7.)  Mr. Sterritt agreed to waive the "attorney-client privilege, the conversations, [and] the privilege" that he enjoys with Mr. Protass.  (*Id.* at 34:11-14.)

Thus, by waiving his privileged communications with Mr. Protass, Mr. Sterritt waived his attorney-client privilege that could hamper defense counsel's cross-examination during trial, should Mr. Sterritt choose to testify.  Upon receiving Mr. Sterritt's consent and waiver of the attorney-client privilege, Mr. Protass is free to conduct an uninhibited inquiry of Mr. Sterritt.  Moreover, Mr. Protass is free to use the information obtained during his prior representation with Mr. Sterritt in his representation of Mr. Ross.  Accordingly, any conflict of interest caused by Mr. Protass's continuing obligations of confidentiality and loyalty to Mr. Sterritt is

"significantly diminished" by Mr. Sterritt's waiver of the attorney-client privilege. *Lussier*, 71 F.3d at 462.

Moreover, the court finds that Mr. Sterritt knowingly and intelligently waived his attorney-client privilege. "Whether a waiver is knowing and intelligent depends on the circumstances of each individual case as well as the background and experience of the accused." *United States v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998). Courts may consider the defendant's unique personal experience when making determinations about whether a waiver is valid. *Id.* at 75-76 (finding that a defendant's waiver was valid because, *inter alia*, his business success and law degree indicated that he was capable of understanding the dangers of being represented by conflicted counsel). Here, the court finds that, given Mr. Sterritt's degrees in finance and marketing, he is capable of understanding the dangers and consequences of waiving his attorney-client privilege. (Sterritt Tr. at 8:13-22.) Moreover, the court explained several potential dangers to Mr. Sterritt (*see id.* at 32:4-34:7), and Mr. Sterritt confirmed that he had sufficient time to speak with his conflict-free counsel about these issues (*id.* at 33:5-10). The court also finds that during the *Curcio* hearings, Mr. Ross demonstrated from his demeanor and responses that he was capable of understanding the consequences of

retaining Mr. Protass as counsel and waiving any potential
conflicts of interest.

Finally, the court is also reassured that Mr. Protass
will fulfill his ethical obligations as an officer of the court
to mitigate any conflicts of interest that may arise in this
case.  In addition to the mitigating steps discussed above, Mr.
Protass also represented that should a conflict arise that is
"unsolvable, irreconcilable, and that would prejudice either Mr.
Ross, my client, or Mr. Sterritt," Mr. Protass would withdraw
from the case, substitute counsel, and turn over all files to
the newly retained counsel.  (Sterritt Tr. at 39:11-40:1.)

For these reasons, the court concludes that the
institutional concerns regarding the integrity of the judicial
proceedings are mitigated because Mr. Protass may vigorously
defend Mr. Ross's interests unhindered by the privilege owed to
Mr. Sterritt.  Absent institutional concerns to the integrity of
the judicial proceedings, "courts will not 'assume too
paternalistic an attitude in protecting the defendant from
himself,' and although the defendant's choice of counsel 'may
sometimes seem woefully foolish' to the court, the choice
remains his." *Perez*, 325 F.3d at 126 (quoting *Curcio*, 694 F.2d
at 25).  "Where the right to counsel of one's choice conflicts
with the right to an attorney of undivided loyalty, the
determination of which right is to take precedence must

generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation." *Cain*, 671 F.3d at 293. Accordingly, the court accepts the defendants' waivers and concludes that defendants knowingly and intelligently waived their rights to conflict-free counsel.[1]

---

[1]    The court also notes that the court's decision to not disqualify Mr. Protass is also consistent with Rule 1.9(a) of New York's Rules of Professional Conduct, which provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." The court is satisfied with the testimony provided at the *Curcio* hearings that defendants Ross and Sterritt knowingly and intelligently waived any conflicts of interest. Mr. Protass, consistent with his ethical obligations and the New York Rules of Professional Conduct, should also obtain informed consent from his clients, confirmed in writing.

**CONCLUSION**

For the foregoing reasons, the court concludes that Mr. Protass does not suffer from an actual, severe, or unwaivable conflict of interest that requires his disqualification.  The court concludes that defendant Ross made a knowing and intentional waiver of his right to conflict-free counsel, and that defendant Sterritt made a knowing and intentional waiver of his attorney-client privilege with Mr. Protass.  After conducting *Curcio* hearings for both defendants spanning three-days, the court accepts the defendants' waivers and concludes that defendants knowingly and intelligently waive their rights to conflict-free counsel.  Accordingly, the court declines to disqualify Mr. Protass from representing defendant Ross.

SO ORDERED.


    /s/
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York


Dated:    Brooklyn, New York
          September 17, 2021